9349

### GERMOFERT MFG. CO v. CATHCART.

#### (88 S. E. 535.)

1. AGRICULTURE—FERTILIZER—EVIDENCE OF INGREDIENTS.—In an action on a contract for the sale of fertilizer, which provided that it was sold only on a guaranteed chemical analysis, and that defendant was not to be responsible for practical results on crops, evidence of the effect on defendant's crops was not admissible.

2. AGRICULTURE—FERTILIZER—STATUTE.—Under Civ. Code 1912, secs. 2315-2330, regulating commercial fertilizers and recognizing a test by analysis, a contract for the sale of fertilizer by guaranteed chemical analysis, in providing that there was to be no liability for practical results on crops, was not unlawful.

Before HON. J. B. PARK, special Judge, Winnsboro, February, 1915. Reversed.

Action by the Germofert Manufacturing Company against A. B. Cathcart. Judgment for the defendant, and plaintiff appeals.

*Messrs. Nathans & Sinkler,* for appellant, cite: 74 S. C. 576; 97 S. C. 359; 77 S. C. 496; 10 Ill. 113; 37 S. C. 17; 27 S. C. 380; Cyc. Contracts 457.

*Messrs. W. D. Douglas* and *McDonald & McDonald,* for respondent. The former cites: *As to admissibility of testimony:* 97 S. C. 358 and 389; 77 S. C. 493.

March 25, 1916.

The opinion of the Court was delivered by MR. JUSTICE FRASER.

This is a suit on the following note:

"Winnsboro, S. C., November 4, 1908.

"On or before the first of December, 1908, I promise to pay Germofert Manufacturing Co., or order, at Winnsboro Bank, eleven hundred seventy-two and 72-100 dollars, with interest at seven per cent. per annum, after matu-

---

FOOTNOTE.—Expressed warranty excluding implied warranties in contract of sale, see note in 33 L. R. A. (N. S.) 596.

rity until paid, and all cost of collection, including attorney's fees, not exceeding ten per cent., if collected by law or through an attorney at law. Balance due for 1,090 bags of fertilizer, sold to me by said payees. It is hereby expressly understood and covenanted, that the said Germofert Manufacturing Company sells said commercial manure as to its quality and effect on crops only on the guaranteed analysis, and I admit that every sack is branded according to law, and that the inspector's tag is on every sack for which this note is given. And I in nowise hold payee responsible for practical results of said fertilizer on crops. And in consideration of the above I accept said fertilizers on these terms, and each of us, whether principal, security, guarantor, indorser or other party hereto, hereby severally waives and renounces, each for himself, demand, protest and notice of demand, protest and nonpayment."

The judgment was for the defendant and the plaintiff appeals, with several exceptions. All of the exceptions involve one question, to wit, Was evidence of the effect on crops admissible?

The effect on crops was not a defense and evidence of effects on crops not admissible. The fertilizer was sold on a guaranteed analysis, and the note contained this provision:

"And I in nowise hold responsible for practical results of said fertilizer on crops."

There was no attempt made to analyze the fertilizer. Ample provision is made by law to secure a reliable analysis. The defendant had agreed that the test of value should be made by analysis. No man can look at a crop (dead or alive) and tell what per cent. of ammonia or potash or other substance it contained. They did not pretend to do so. The defendant had agreed not to "hold payees responsible for practical results of said fertilizer on crops." This evidence, and the charge responding to it, was in direct violation of the agreement.

It cannot be said that test of value by analysis is an unlawful contract, because the statutes recognize a test by analysis. The defendant signed a perfectly lawful contract, with ample protection afforded by law. The defendant cannot refuse to adopt the protection approved by law and offered by his contract and be allowed to avail himself of a method of defense that he has agreed not to use. Some substances may kill because they are true to analysis.

The judgment is reversed.

MESSRS. JUSTICES WATTS and GAGE concur in the opinion of the Court.

MR. CHIEF JUSTICE GARY, *dissenting.* This is an action on the following note:

"On or before the first of December, 1908, I promise to pay to Germofert Manufacturing Company, or order, at Winnsboro Bank, eleven hundred and seventy-two and 72-100 dollars, with interest at seven per cent. per annum, after maturity until paid, and all costs of collection, including attorney's fees, not exceeding ten per cent. if collected by law or through an attorney at law. Balance due for 1,090 bags of fertilizer, sold to me by said payees. It is hereby expressly understood and covenanted, that the said Germofert Manufacturing Company sells said commercial manure as to its quality and effect on crops, only on the guaranteed analysis, and I admit that every sack is branded according to law, and that the inspector's tag is on every sack for which this note is given. And I in nowise hold payees responsible for practical results of said fertilizer on crops. And in consideration of the above I accept said fertilizer on these terms, and each of us, whether principal, security, guarantor, indorser or other party hereto, hereby severally waives and renounces, each for himself, demand, protest and notice of demand, protest and nonpayment. (Signed) A. B. Cathcart."

The defendant admitted the execution of the note, but pleaded .failure of consideration and breach of warranty on the part of the plaintiff. The jury rendered a verdict in favor of the defendant, and the plaintiff appealed.

His Honor, the presiding Judge, allowed the defendant to introduce testimony as to the condition of the crops upon which the fertilizer was used, for the sole purpose of showing that the guaranteed analysis did not contain the ingredients therein stated. The appellant's attorneys objected to the introduction of this testimony; and the practical question argued by them is whether the fact that the guaranteed analysis failed to state correctly the ingredients composing the fertilizer could be established in any other manner than by a chemical analysis. There is no good reason why such fact could not be proved by circumstantial, as well as direct, testimony, in the absence of a legal requirement providing the manner in which such fact should be established. Furthermore, the contract herein must be construed in connection with chapter 34, art I, Code of Laws 1912. *Phosphate Co.* v. *Arthurs,* 97 S. C. 358, 81 S. E. 663. The cause just cited is similar to the one under consideration, and, in discussing a similar defense, the Court said:

"If there was failure to comply with the statutory requirements, in the manner set forth in the defense interposed by the defendant, then a recital in the note to the contrary would be construed as an attempt to dispense with the statutory requirements, and, therefore, null and void, on the ground of public policy."

This is clearly shown by Associate Justice (afterwards Chief Justice) McIver, who delivered the opinion of the Court in the case of *McConnell* v. *Kitchens,* 20 S. C. 430, 47 Am. Rep. 845, in which similar statutes were under consideration.

MR. JUSTICE HYDRICK concurs in the dissenting opinion.